712 So.2d 788 (1998)
Lillian ARMSTRONG, Appellant,
v.
ALLSTATE INSURANCE COMPANY, a corporation, Appellee.
No. 97-00928.
District Court of Appeal of Florida, Second District.
June 19, 1998.
*789 Richard L. Purtz of Goldberg, Goldstein & Buckley, P.A., Fort Myers, for Appellant.
Bonita Kneeland Brown of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for Appellee.
THREADGILL, Judge.
In this declaratory judgment action, the appellant, Lillian Armstrong, challenges the entry of a final summary judgment in favor of the appellee, Allstate Insurance Company, in this dispute about uninsured motorist (UM) coverage. We reverse.
On March 21, 1994, Armstrong was a passenger in a vehicle owned and operated by Decker, when it became involved in an accident with another vehicle owned and operated by Fraser. Armstrong was injured as a result of the accident, which she claims was the fault of both drivers. Decker was insured by Allstate at the time of the accident, but Fraser had no insurance coverage whatsoever. Armstrong eventually recovered the limits of Decker's liability coverage under his Allstate policy for his negligence. She then, however, sought to recover the limits of Decker's UM coverage under the same policy for Fraser's negligence, because she had no UM coverage of her own. When Allstate rejected Armstrong's claim in that regard, she filed the instant action, seeking a declaration as to the existence of UM coverage under these circumstances. After Armstrong filed an amended complaint, Allstate filed a motion for summary judgment, arguing that Armstrong was precluded, as a matter of law, from collecting both liability and UM benefits under the same policy for injuries arising from the same accident. Upon determining that there were no disputed issues of material fact, and concluding that Allstate was entitled to a summary judgment as a matter of law, the trial court entered a final summary judgment in favor of Allstate. Armstrong filed a timely notice of appeal.
On appeal, Armstrong contends that insurance policies should be interpreted in a manner which provides the broadest coverage, and that it is the public policy of this state to protect citizens, through the availability of UM coverage, from physical harm caused by uninsured drivers. She thus argues that, in this instance, she is a class II insured under Decker's policy for purposes of both liability and UM coverage and, since there is no exclusion in the policy to prohibit her recovery of UM benefitseven though she has already collected the $10,000 limits of Decker's liability coverage for his negligenceshe should not be barred from collecting UM benefits for Fraser's negligence. Armstrong claims she is entitled to UM benefits under these circumstances, because Fraser's negligence, when combined with Decker's negligence, caused her to suffer damages in excess of the $10,000 limits of Decker's liability coverage.
Allstate contends that to permit UM coverage in this instance would violate the provisions of Decker's policy, which limit coverage to $10,000 for any one person involved in any one occurrence or accident. Allstate also *790 claims that public policy with respect to UM coverage, as expressed in existing Florida law, would be violated as well.
Uninsured motorist coverage was created by the legislature for the benefit of injured persons, and not for the benefit of insurance companies. See Foremost Ins. Co. v. Warmuth, 649 So.2d 939 (Fla. 4th DCA 1995). See also Brown v. Progressive Mut. Ins. Co., 249 So.2d 429 (Fla.1971). In Foremost, the Fourth District cited Mullis v. State Farm Mutual Automobile Insurance Co., 252 So.2d 229, 234 (Fla.1971), wherein the supreme court declared that, with regard to UM protection, it is the public policy of this state that every insured is entitled to recover whatever damages he or she would otherwise be able to recover if the uninsured motorist causing the damages had maintained a policy of liability insurance. Foremost, 649 So.2d at 941. Section 627.727, Florida Statutes (1993), which provides for UM coverage and specifies the damages recoverable from a UM carrier, embodies that public policy. Section 627.727 allows an insured, who has been injured by an uninsured motorist, the same recovery under his or her UM coverage, as he or she would have obtained had the uninsured tortfeasor been insured to the same extent as the insured's UM coverage. See Dewberry v. Auto-Owners Ins. Co., 363 So.2d 1077 (Fla.1978); Allstate Ins. Co. v. Morales, 533 So.2d 952 (Fla. 5th DCA 1988). The UM carrier, in essence, becomes the uninsured tortfeasor's insurer, with limits as set forth in the insured's UM policy. Foremost, 649 So.2d at 940. In this instance, it is undisputed that Armstrong is a class II insured under Decker's policy. See Travelers Ins. Co. v. Quirk, 583 So.2d 1026, 1028 (Fla.1991)(a class II insured is a lawful occupant of an insured vehicle, who is not a named insured or resident family member of a named insured under the policy insuring the subject vehicle). As a class II insured, Armstrong is entitled to liability and UM coverage under that policy. Id. Thus, to deny her the right to recover her damages from Fraser under Decker's UM coverage, without more, is a violation of this state's public policy.
The foregoing notwithstanding, a class II insured cannot treat the same automobile as both insured and uninsured for purposes of collecting both liability and UM benefits under the same policy, for injuries arising out of a single-car accident involving only one tortfeasor. See Travelers Ins. Co. v. Warren, 678 So.2d 324 (Fla.1996). See also Bulone v. United Services Auto. Ass'n., 660 So.2d 399 (Fla. 2d DCA 1995); Peel v. Allstate Ins. Co., 522 So.2d 505 (Fla. 2d DCA 1988); Fidelity & Cas. Co. v. Stretcher, 506 So.2d 92 (Fla. 2d DCA 1987); Nicholas v. Nationwide Mut. Fire Ins. Co., 503 So.2d 993 (Fla. 1st DCA 1987). The reason for such a restriction is that it was never the intention of the legislature to use UM coverage as simply an extension of liability coverage to the same injured party against the same tortfeasor. See Warren; Bulone; Peel; Streicher. See also State Farm Mut. Auto. Ins. Co. v. McClure, 501 So.2d 141 (Fla. 2d DCA 1987). In the instant case, however, Armstrong is not seeking to treat Decker's automobile as both insured and uninsured for purposes of stacking liability and UM benefits to extend Decker's liability coverage for his negligence; rather, she is seeking to tap Decker's UM coverage, which is essentially her own as a class II insured, because Fraser and his automobile were uninsured. Furthermore, Decker's policy plainly provides that Armstrong, as a person lawfully riding in Decker's insured automobile, can claim UM coverage thereunder so long as she is not covered by another policy. According to the undisputed facts, Armstrong was not covered by another policy at the time of the accident at issue.
In Woodard v. Pennsylvania National Mutual Insurance Co., 534 So.2d 716 (Fla. 1st DCA 1988), a case with facts similar to those at issue herein, the First District permitted a class II insured passenger to recover under the driver's bodily injury liability coverage, as well as under the driver's UM coverage provided in the same policy, based on the negligence of an uninsured second driver. The court reasoned that such a result was permissible, because there were two different vehicles and two different negligent drivers. The Woodard court stated, *791 We conclude that neither Streicher nor Nicholas precludes recovery of uninsured motorist benefits under the facts of the instant case. Apart from the fact that in neither [Streicher nor Nicholas] did the vehicle involved qualify as an `uninsured motor vehicle,' in each of those cases liability insurance on that vehicle had been paid and the plaintiff was trying to effectively stack the uninsured motorist coverage on top of the liability coverage.... On the other hand, in the instant case Woodard was not attempting to collect uninsured motorist coverage on the vehicle in which he was riding based on [the driver's] negligence, but was seeking to collect the damages owed by [the driver of the other vehicle involved] for [his] negligence. Woodard was not claiming that [the] vehicle [he was riding in] fit within the definition of an `uninsured or underinsured motor vehicle'; he was claiming that [the other driver's] vehicle was an `uninsured motor vehicle.'
Id., 534 So.2d at 721. The same is true here. Thus, since neither Warren, Bulone, Streicher, nor Nicholas presents a conflict with Woodard, those cases likewise do not present a legal bar to the extension of UM coverage to Armstrong in this instance. We especially agree with Woodard's distinction between the facts thereinand, consequently, the facts of the instant caseand those in Streicher and Nicholas.
Woodard also guides us in addressing Allstate's argument that Armstrong's entitlement to UM coverage here is barred by a policy provision which limits recovery to $10,000 for any one person in any one accident. In Woodard, the policy there contained a provision which limited any recovery to $10,000, because UM benefits were to be reduced by all liability benefits paid. The First District determined the provision to be invalid under the 1984 UM statute, which expressly prohibited reduction of UM coverage by a set-off against liability coverage. Woodard, 534 So.2d at 722 (referencing section 627.727(1), Florida Statutes (Supp.1984)). Here, section 627.727(1), Florida Statutes (1993), provides that UM coverage is to be available in addition to liability coverage, rather than reduced by such coverage though, UM coverage is not to duplicate liability coverage. The Allstate policy provision limiting recovery in this instance is therefore invalid, because it effectively precludes the availability of non-duplicative UM coverage in addition to liability coverage.
Based on the foregoing, we reverse the final summary judgment for Allstate and remand this cause for further proceedings.
CAMPBELL, A.C.J., and GREEN, J., concur.